# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# 3:21-cr-231-KDB-DCK-1

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | |
| ) | **ORDER** |
| **MARVIN MAURICE WILLIAMS,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

**THIS MATTER** is before the Court on Defendant's pro se Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [Doc. 60], and on the United States of America's Motion to Dismiss [Doc. 65].

## I. BACKGROUND

Defendant was charged with: interference with interstate commerce by robbery in violation of 18 U.S.C. § 1951 (Count One); brandishing a firearm during, in relation to, and in furtherance of a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)(ii) (Count Two); and possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1) (Count Three). [Doc. 18 (Superseding Indictment)].

The Defendant pleaded guilty to Count One, and admitted that he is guilty as charged of that offense, in exchange for the Government's dismissal of Counts Two and Three. [Doc. 23 at ¶¶ 1-2 (Plea Agreement)]. The Plea Agreement states that the offense charged in Count One is punishable by up to 20 years' imprisonment, a $250,000 fine, and three years of supervised release. [Id. at ¶ 5]. The parties agreed to jointly recommend: the plea is timely for purposes of acceptance

1

of responsibility, if applicable; the career offender or armed career criminal provisions may be used to determine the sentence, if applicable; the sentence should be 151 months' imprisonment; and the United States will inform the Court and the probation officer of all facts pertinent to the sentencing process and will present any evidence requested by the Court. [Id. at ¶ 8].

The Plea Agreement further provides that: the Court would consider the advisory U.S. Sentencing Guidelines; the Court had not yet determined the sentence; any estimate of the likely sentence is a prediction rather than a promise; the Court would have the final discretion to impose any sentence up to the statutory maximum for each count; the Court would not be bound by the parties' recommendations or agreements; and Defendant would not be permitted to withdraw his plea as a result of the sentence imposed. [Id. at ¶ 7]. The Plea Agreement provides as follows with regards to breach:

> In addition to any other remedy available in law, the defendant's breach: (a) will relieve the United States of its obligations under the Plea Agreement, without relieving the defendant of the defendant's obligations under the Plea Agreement or permitting the defendant to withdraw the guilty plea; (b) may constitute the defendant's failure to accept responsibility under U.S.S.G. § 3E1.1; and (c) will permit the United States to proceed on any dismissed, pending, superseding or additional charges and, if applicable, any Information pursuant to 21 U.S.C. § 851.

[Id. at ¶ 4].

The Plea Agreement provides that there is a factual basis for the guilty plea, and that Defendant read and understood the written Factual Basis that was filed with the Plea Agreement, which may be used by the Court, U.S. Probation Office, and United States without objection for any purpose, including to determine the applicable advisory guideline range or the appropriate sentence. [Id. at ¶ 11]. The Plea Agreement further provides that the Factual Basis does not necessarily represent all of the conduct relevant to sentencing, and that the Government may submit a Statement of Relevant Conduct to the Probation Office and present the Court with

additional relevant facts prior to or at sentencing. [Id. at ¶ 12].

The Plea Agreement sets forth the rights Defendant was waiving by pleading guilty, including the right: to withdraw the guilty plea once the Magistrate Judge has accepted it; to be tried by a jury; to be assisted by an attorney at trial; to confront and cross-examine witnesses; and not be compelled to incriminate himself. [Id. at ¶¶ 13-15]. The Plea Agreement acknowledges that Defendant had discussed with defense counsel his post-conviction and appellate rights, and he expressly waived those rights except for claims of ineffective assistance of counsel or prosecutorial misconduct. [Id. at ¶¶ 16-17]. The Plea Agreement provides that "[t]here are no agreements, representations, or understandings between the parties in this case, other than those explicitly set forth in this Plea Agreement, or as noticed to the Court during the plea colloquy and contained in writing in a separate document signed by all parties." [Id. at ¶ 23].

The Factual Basis that was filed along with the Plea Agreement provides in relevant part:

On or about September 7, 2021, the defendant, MARVIN MAURICE WILLIAMS, within Mecklenburg County and the Western District of North Carolina:

a) Obtained cash from another without that person's consent;
b) The defendant did so by wrongful use of actual or threatened force, violence, or fear; and
c) As a result of the defendant's actions, interstate commerce, or an item moving in interstate commerce, was actually or potentially delayed, obstructed, or affected in any way or degree.

[Doc. 24 at 1 (Factual Basis)] (paragraph numbers omitted).

A Rule 11 hearing came before a magistrate judge on March 1, 2022. [Doc. 54]. The Defendant stated under oath that he received a copy of the Indictment, discussed it with counsel, and understood the charge to which he was pleading guilty and his sentencing exposure of up to 20 years' imprisonment, a $250,000 fine, and three years of supervised release. [Id. at 3-4, 7]. The Defendant agreed that: he understood that pleading guilty may cause him to be deprived of certain

3

civil rights; he discussed with counsel how the sentencing guidelines may apply to his case; the Court would not be able to determine the sentence until a PSR has been prepared and Defendant has had an opportunity to comment on it; he may receive a sentence that is different from that called for by the guidelines; and he would have no right to withdraw the plea even if he receives a sentence more severe than he expects. [Id. at 4-5]. Defendant acknowledged the rights he was waiving by pleading guilty. [Id. at 5-6].

The Plea Agreement was summarized in open court. [Id. at 6-8]. Defendant confirmed that he understood and agreed with the terms of the Plea Agreement, including the waiver of his appellate and post-conviction rights. [Id. at 8-9]. Defendant stated that he read the Factual Basis, understood it, and agreed with it. [Id. at 9]. He admitted that he is guilty as charged in Count One. [Id. at 6]. Defendant stated that nobody threatened, intimidated, or forced him to plead guilty, and that nobody made any promises of leniency or a light sentence to induce him to plead guilty. [Id. at 9]. Defendant agreed that he had enough time to discuss any possible defenses with his lawyer and was satisfied with counsel's services. [Id. at 9-10].

The Presentence Investigation Report (PSR) includes the information set forth in the Factual Basis. [Doc. 35 at ¶ 5]. It also includes a Statement of Relevant Conduct that includes detailed evidence regarding the offenses, including the Defendant's own statement to law enforcement, a gun and cash recovered from his vehicle, an eyewitness identification by the armed robbery victim, and surveillance video footage. [Id. at ¶¶ 7-12]. The PSR scored the base offense level as 20 pursuant to U.S. Sentencing Guidelines § 2B3.1 because the offense is a violation of § 1951. [Id. at ¶ 18]. A six-level enhancement was added pursuant to U.S.S.G. § 2D1.1(b)(1)(B) because a firearm was used. [Id. at ¶ 19]. A four-level enhancement was added pursuant to U.S.S.G. § 2B3.1(b)(4)(A) because a person was abducted to facilitate the commission of the

4

offense or to facilitate escape. [Id. at ¶ 20]. Three levels were deducted for acceptance of responsibility. [Id. at ¶¶ 26-27]. This resulted in an offense level of 27. [Id. at ¶ 28]. The Defendant had nine criminal history points and a criminal history category of IV. [Id. at ¶ 60-61]. This resulted in an advisory guideline range of 100 to 125 months' imprisonment. [Id. at ¶ 91]. The PSR notes the impact of the Plea Agreement as follows:

> The defendant pled guilty to Count 1 of the Superseding Bill of Indictment in exchange for the dismissal of Counts 2 and 3. A conviction as to Count 2 as charged would have resulted in 84 months of imprisonment consecutive to any sentence imposed on the remaining counts. Pursuant to the Plea Agreement, the parties agree to a joint recommendation of 151 months in prison.

[Id. at ¶ 92].

Counsel filed objections, inter alia, to the four-level abduction enhancement. [Doc. 34]. A sentencing hearing came before the Court on November 2, 2022. [Doc. 55]. The Defendant agreed that he had read the PSR and understood it, and that he had all the time he would like to discuss it with counsel. [Id. at 2-3]. Defense counsel raised the abduction enhancement at the hearing, but noted that "[i]t affects the guidelines but it doesn't affect the eventual sentence [because] we have a recommendation which actually constitutes an upward variance…." [Id. at 3]. The Court overruled the objection based on binding case law. [Id.]. Counsel then explained why the parties had agreed to an upward variance sentence as follows:

> MR. JOHNSON: Your Honor, as the Court is aware, there is a joint recommendation from the parties to 151 months which actually constitutes an upward variance…. [H]ow we looked at this case was there were some concerns whether or not he was going to be a career offender since the status of the Hobbs Act robbery and whether it constitutes a predicate for a career offender status. and then we looked at the plea from the United States. The original plea offer was to a robbery, Hobbs Act robbery, and a 924(c) and the guidelines would have overlapped between the plea agreement that we entered into and one with a 924(c) at – or right around 151 months. And **we didn't want to put the risk that if he was a career offender with a 924(c), his guideline range would have started at 262 and that was a risk we were adverse to. So we agreed to a 151-month**

5

**sentence**….

[Id. at 4-5] (emphasis added). The Defendant apologized and expressed remorse. [Id. at 7]. The parties recommended a 151-month sentence in accordance with the Plea Agreement. [Id. at 6-10]. After considering the relevant factors, the Court agreed and sentenced the Defendant to 151 months' imprisonment. [Id. at 10-13; Doc. 42 (Judgment)]. The Defendant sought to challenge his sentence on direct appeal. The Fourth Circuit Court of Appeals dismissed the appeal on October 19, 2023 because the issues that the Defendant sought to raise were barred by his appellate waiver. [Doc. 56].

The Defendant filed the instant § 2255 Motion to Vacate on June 2, 2024.[1] [Doc. 60]. He argues that counsel was ineffective for (restated and renumbered): (1) providing misadvice with regards to the guilty plea by failing to inform Defendant that the § 924(c) charge would be used to enhance his sentence, and promising that he would receive a three-level deduction for acceptance of responsibility; and (2) at sentencing for failing to demand "specific performance" of the Plea Agreement and failing to object to a sentence above the guideline range. [Id. at 4]. The Defendant contends that he "would not have pled guilty" but for counsel's deficient performance and that his sentence would have been lower had counsel performed effectively. [Id.]. The Defendant seeks the appointment of counsel and an evidentiary hearing. [Id. at 5-6]. The Government filed a Motion to Dismiss, arguing that the § 2255 Motion to Vacate should be dismissed or denied because the record conclusively establishes that the Defendant is not entitled to relief. [Doc. 65]. The Defendant opposes the Motion to Dismiss, arguing that the assertions in his sworn Motion to Vacate should be accepted and warrant an evidentiary hearing with the assistance of counsel. [Doc.

---

[1] Houston v. Lack, 487 U.S. 266, 276 (1988) (establishing the prisoner mailbox rule); Rule 3(d), 28 U.S.C. foll. § 2255 (addressing inmate filings).

67]. The Government has not replied and the time to do so has expired. Accordingly, this matter is ripe for disposition.

## II. SECTION 2255 STANDARD OF REVIEW

A federal prisoner claiming that his "sentence was imposed in violation of the Constitution or the laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the Defendant is entitled to any relief on the claims set forth therein. After examining the record in this matter, the Court finds that the arguments presented by Defendant can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

## III. DISCUSSION[2]

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. Const. Amend. VI. To show ineffective assistance of counsel, a defendant must first establish deficient performance by counsel and, second, that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). The deficiency prong turns on whether "counsel's representation fell below an objective standard of reasonableness ... under prevailing professional

---

[2] The Defendant's claims have been reorganized and restated. Any argument or subclaim that is not specifically addressed has been considered and rejected.

7

norms." Id. at 688. A reviewing court "must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." Harrington v. Richter, 562 U.S. 86, 104 (2011) (quoting Strickland, 466 U.S. at 689). The Strickland standard is difficult to satisfy in that the "Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." See Yarborough v. Gentry, 540 U.S. 1, 8 (2003). The prejudice prong inquires into whether counsel's deficiency affected the judgment. See Strickland, 466 U.S. at 691. A defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. In considering the prejudice prong of the analysis, a court cannot grant relief solely because the outcome would have been different absent counsel's deficient performance, but rather, it "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)). Under these circumstances, a defendant "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008). If the defendant fails to meet this burden, a "reviewing court need not even consider the performance prong." United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), *vacated on other grounds*, 218 F.3d 310 (4th Cir. 2000).

   A. **Involuntary Plea**

The right to the assistance of counsel during criminal proceedings extends to the plea-bargaining process. See Missouri v. Frye, 566 U.S. 134 (2012). Thus, criminal defendants are "entitled to the effective assistance of competent counsel" during that process. Lafler v. Cooper, 566 U.S. 156, 162 (2012) (internal quotation marks omitted); Merzbacher v. Shearin, 706 F.3d

8

356, 363 (4th Cir. 2013). Where a defendant enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was "within the range of competence demanded by attorneys in criminal cases." Hill v. Lockhart, 474 U.S. 52, 56 (1985) (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)). To satisfy Strickland's prejudice prong, the defendant must show "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59; Meyer v. Branker, 506 F.3d 358, 369 (4th Cir. 2007); see Lee v. United States, 582 U.S. 357, 364-65 (2017) (the question is whether the defendant would have gone to trial, not whether the result of trial would have been different than the result of the plea bargain). Put differently, a defendant "must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." Padilla v. Kentucky, 559 U.S. 356, 372 (2010).

The Defendant's contention that counsel misadvised him that he would receive three points for acceptance of responsibility if he pleaded guilty is conclusively refuted by the record because he did, in fact, receive that three-level reduction. [See Doc. 35 at ¶¶ 26-27]. Counsel did not perform deficiently by correctly advising the Defendant in this regard, and the Defendant cannot demonstrate prejudice because this correct advice could not have affected the plea's voluntariness.

The Defendant's contentions that counsel misadvised him that the § 924(c) charge in Count Two would be dismissed and that he would not be "enhanced" for that offense also fail. The § 924(c) charge in Count Two was dismissed in accordance with the Plea Agreement; the Defendant was not sentenced or "enhanced" for violating § 924(c). [Doc. 42 at 1; Doc. 55 at 13; Doc. 35 at ¶¶ 17-28]. The PSR did add a six-level enhancement because a firearm was used during the Hobbs Act robbery. [Doc. 35 at ¶ 19]. However, this enhancement was applied pursuant to U.S.S.G. § 2B3.3(b)(2)(B), and not pursuant to § 924(c). The Defendant's present suggestions that counsel

9

failed to inform him of this possible enhancement, and that such rendered his plea involuntary, are rejected. The Defendant admitted under oath at the Rule 11 hearing that: he spoke to counsel about how the guidelines may apply to his case; he understood the guideline range had not yet been determined; the parties' recommendations would not be binding on the Court; he may be sentenced up to the statutory maximum of 20 years' imprisonment; he would not be allowed to withdraw his plea if he received a sentence higher than he anticipated; and nobody made promises of leniency or a light sentence to induce him to plead guilty. [Doc. 54 at 4-5, 9]. His present self-serving and unsupported contention that counsel made him sentencing promises outside of the Plea Agreement is rejected. See Blackledge v. Allison, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."); see, e.g., United States v. Lemaster, 403 F.3d 216, 221 (4th Cir. 2005) ("[A]llegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always 'palpably incredible' and 'patently frivolous or false.'").

Moreover, Defendant has failed to demonstrate prejudice. His conclusory and unsupported contention that "Movant would not have pled guilty" is insufficient. [Doc. 60 at 4]. Nor would it have been objectively reasonable to proceed to trial in the circumstances of this case. The Plea Agreement was extremely favorable in that: it led to the dismissal of two serious charges including a § 924(c) violation that would have carried a mandatory consecutive sentence and raised a concern about potential career offender sentencing, and he received a three-level reduction in the offense level for acceptance of responsibility. [See Doc. 55 at 4-5]. Further, there was overwhelming evidence of Defendant's guilt as outlined in the Factual Basis and the PSR. It would not have been

10

objectively reasonable, under these circumstances, for the Defendant to have proceeded to trial. See generally United States v. Santiago, 632 F. App'x 769, 774 (4th Cir. 2015) ("when the Government's case is strong," a § 2255 petitioner "faces a nearly insurmountable obstacle to showing that it would have been rational to go to trial."); United States v. Fugit, 703 F.3d 248, 259 (4th Cir. 2012) (finding that the decision to go to trial would not have been objectively reasonable where the evidence of petitioner's guilt was overwhelming).

The Defendant's claims that counsel provided ineffective assistance that rendered the guilty plea involuntary are, therefore, dismissed and denied.

### B. Sentencing

When an ineffective assistance claim relates to a sentencing issue, a petitioner must demonstrate a "reasonable probability that his sentence would have been more lenient" but for counsel's error. Royal v. Taylor, 188 F.3d 239, 249 (4th Cir. 1999) (internal quotation omitted). When applying the Strickland prejudice test in the context of sentencing, "any amount of actual jail time has Sixth Amendment significance." Glover v. United States, 531 U.S. 198, 203 (4th Cir. 2001).

The Defendant's contention that counsel was ineffective for failing to insist on specific performance of the Plea Agreement is too vague and conclusory to support relief insofar as he fails to identify any violation of the Plea Agreement by the Government. See United States v. Dyess, 730 F.3d 354 (4th Cir. 2013) (vague and conclusory allegations in a § 2255 petition may be disposed of without further investigation by the court). A careful review of the record reveals no violation of the Plea Agreement. The Government adhered to its obligations under the Plea Agreement by acknowledging the timeliness of the Defendant's plea, moving to dismiss Counts Two and Three, and recommending a 151-month sentence. The Defendant has failed to show that

11

the Government breached the Plea Agreement, and counsel cannot be faulted for failing to raise a meritless objection that would have been overruled. See Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) ("this Court has never required defense counsel to pursue every claim or defense, regardless of its merit, viability, or realistic chance for success."); Lockhart, 506 U.S. at 374 (there is no prejudice where counsel fails to make an objection that is "wholly meritless under current governing law").

The Defendant's contention that counsel should have objected to the Court's imposition of an above-guideline sentence also fails. The Plea Agreement, that the Defendant knowingly and voluntarily accepted, provides that the parties would jointly recommend a sentence of 151 months' imprisonment. [Doc. 23 at ¶ 8]. Counsel explained the rationale behind that agreement at the sentencing hearing, i.e., that the Defendant may have received a career offender enhancement had he been convicted of the § 924(c) offense. [See Doc. 55 at 4-5]. It was reasonable for counsel not to object to the 151-month sentence to which the Defendant specifically agreed. Moreover, the Defendant has failed to demonstrate prejudice. Objecting to the agreed sentence had no reasonable probability of success and may have been construed as breaching the Plea Agreement, which would have been counterproductive. [See Doc. 23 at ¶ 4]; see generally Strickland, 466 U.S. at 690-91 ("strategic choices made after thorough investigation … are virtually unchallengeable").

Accordingly, the Defendant's claims that counsel was ineffective with regards to sentencing are dismissed and denied.

C. **Appointment of Counsel**

There is no constitutional right to the appointment of counsel in a § 2255 proceeding. Pennsylvania v. Finley, 481 U.S. 551, 555 (1987). In § 2255 actions, appointment of counsel is governed by the Rules Governing § 2255 Proceedings, Rules 6(a) and 8(c), which mandate the

12

appointment of counsel where discovery is necessary or if the matter proceeds to an evidentiary hearing. The Court may appoint counsel to a financially eligible habeas petitioner if justice so requires. See 18 U.S.C. § 3006A(a)(2)(B).

Here, the Defendant asks the Court to appoint counsel and that counsel represent him at an evidentiary hearing. [Doc. 60 at 5-6; Doc. 67 at 6]. However, no evidentiary hearing is required and the Defendant has failed to establish that the appointment of counsel is warranted in the interest of justice. Accordingly, the Defendant's request for the appointment of counsel is denied.

## IV. CONCLUSION

For the foregoing reasons, the Government's Motion to Dismiss is granted and the Defendant's Motion to Vacate is dismissed and denied.

**IT IS, THEREFORE, ORDERED** that:

1. The Government's Motion to Dismiss [Doc. 65] is **GRANTED**.

2. The Defendant's § 2255 Motion to Vacate [Doc. 60] is **DISMISSED AND DENIED.**

3. **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a Defendant must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a Defendant must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

**IT IS SO ORDERED**.

Signed: July 26, 2024

Kenneth D. Bell
United States District Judge